UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**STEPHEN A. WALCOTT, JR.**                                                   CIVIL ACTION

**VERSUS**                                                                     NO. 19-13693

**STATE OF LOUISIANA**                                                     SECTION: "D"(3)

## FINDINGS AND RECOMMENDATIONS

Petitioner, Stephen A. Walcott, Jr., a Louisiana state pretrial detainee, filed the instant federal petition seeking habeas corpus relief.[1] For the following reasons, it is recommended that his petition be **DISMISSED**.

Petitioner has been charged with – and is awaiting trial on – the following crimes under Louisiana law: domestic abuse battery;[2] attempted second degree murder and possession of a firearm by a felon;[3] simple criminal damage to property less than $500;[4] and second degree battery.[5]

---

[1] Federal law provides:

> (a)  Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. …
>
> ….
>
> (c)  The writ of habeas corpus shall not extend to a prisoner unless –
>
> ….
>
> (3)  He is in custody in violation of the Constitution or laws or treaties of the United States ….

28 U.S.C. § 2241.
[2] State Rec., Vol. 1 of 6, bill of information, Case No. 685155.
[3] State Rec., Vol. 1 of 6, bill of information, Case No. 728672.
[4] State Rec., Vol. 1 of 6, bill of information, Case No. 746493.
[5] State Rec., Vol. 1 of 6, bill of information, Case No. 748075.

On November 15, 2017, the state district court appointed Drs. Mary L. Eschete and Brian J. Matherne to examine petitioner and report on his mental condition.[6] Dr. Eschete issued a report stating:

> Mr. Steven Walcott has either a mood disorder or a bipolar disorder; both of which could prevent him from participating in his trail [sic]. … I do not know his mental state at the time of the alleged incident; however at this time, Mr. Walcott could not assist his attorney in the courtroom. He could not maintain proper decorum. He would not be able [to] help his attorney question witnesses. Please get him to the proper facility and care that he needs.[7]

Dr. Matherne, however, disagreed, concluding:

> Mr. Walcott has no history of mental illness and has reportedly never been treated for any mental related problems. He did understand the workings of the judicial system and had a good understanding of the court proceedings. Mr. Walcott did express some concerns about his representation by his attorneys and was intent on defending himself during the court proceedings. We discussed the risk of such a venture and he seemed to be well informed as to the potential risk of defending himself in court. He is not mentally deficient and has no evidence of mental illness and I do feel that he is competent to proceed to trial. He is able but unwilling to let his attorney assist him in his defense but by his choice not by any mental or psychiatric condition.[8]

Because those opinions were conflicting, the state district court then appointed Dr. Joshua D. Sanderson to also examine petitioner.[9] After that examination, Dr. Sanderson issued an exhaustive and detailed report, concluding:

> Mr. Walcott was able to recall and relate facts pertaining to his actions and whereabouts at certain times. He was able to give a clear, rational, and detailed account of his previous medical and social history. His history was consistent with that provided by his medical records. He demonstrated minimal memory deficits on examination, but these are not believed to interfere with his courtroom abilities, as he was able to compensate with prompting. He demonstrated the ability to register and recall information presented to him. He was able to give some details

---

[6] State Rec., Vol. 1 of 6, Order dated November 15, 2017.
[7] State Rec., Vol. 1 of 6, report of Dr. Mary L. Eschete.
[8] State Rec., Vol. 1 of 6, report of Dr. Brian J. Matherne.
[9] State Rec., Vol. 1 of 6, Order dated February 22, 2018.

of his actions on the day of the alleged offense, but made frequent statements that were contradictory.

Mr. Walcott demonstrated difficulty in his ability to assist counsel in locating and examining relevant witnesses. He identified his attorney and their role in his case, but displayed paranoia in regards to his attorney's intentions. He had a rational and factual understanding of what a witness is, but was unable to consistently state the individuals present at relevant times. He frequently stated that there was "no victim," but later made multiple statements about the victim. He stated that his "supervisory team at my job site" would be considered witnesses in his case; however, he did not wish to discuss these individuals at the time of the evaluation.

He had the capacity to maintain a consistent defense; however, Mr. Walcott's current defense is intertwined with delusional thought content and inconsistencies. He voiced at multiple times throughout the interview that the court had no evidence to move forward, that there was no victim, that the police reports had been falsified, that his defense attorney had offered him a plea bargain of lesser time for sexual favors, and that he was being detained illegally.

He did not have the capacity to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements. He voiced a delusional belief that there was a conspiracy involving family members of the victim, confidential informants, the prosecutor, and his defense attorney.

He was unable to demonstrate the ability to make simple decisions in response to well-explained alternatives as they relate to his specific case. He was able to explain plea-bargaining and how both sides would potentially benefit. He was able to act in what he believed was his own best interest; however, his delusional beliefs hinder his ability to participate in this process. He defined a plea bargain as "saying you committed the crime for a lesser time than punishable by law … willing to accept for lesser time …" He evidenced delusions [sic] thought content involving law enforcement conspiracies, his defense attorney's actions, the food at the correctional facility, and the court's illegal practices.

He was unable to testify in his own defense if necessary. He demonstrated an adequate command of language, but answered many questions with illogical and irrelevant responses related to his delusional thought content.

He is likely to continue to deteriorate during the trial as long as he does not receive psychiatric intervention. He is housed at the Terrebonne Parish Criminal Justice Complex and is functioning independently within the correctional setting. He has been functioning adequately in this setting, as a majority of his fixed delusions are specific to court proceedings.

….

> … It is the opinion of the examiner with reasonable medical certainty that although Mr. Walcott demonstrates a factual understanding of the nature of the proceedings, his delusional thought content directly results in his inability to demonstrate the rational understanding required to fulfill the Bennett Criteria. His symptoms also result in an inability to assist in his defense. The evaluation supports a recommendation that Mr. Walcott requires hospital-based restoration in order to treat his psychiatric condition and provide Mr. Walcott with forensic education concerning his charges and proceedings. With the correct treatment at a long-term forensic psychiatric facility, Mr. Walcott's symptoms would improve, affording him the opportunity to demonstrate an ability to fulfill the criteria required to proceed to trial.[10]

At a hearing on May 9, 2018, the state district court found that petitioner lacked the mental capacity to understand the proceedings against him or to assist in his defense and, therefore, committed him to the Eastern Louisiana Mental Health System, Forensic Division ("ELMHS") at Jackson, Louisiana.[11]

On October 1, 2018, Dr. Janet E. Johnson of ELMHS then notified the state district court:

> Mr. Walcott is delusional, perseverative and fixated on writing letters to the court and filing his own appeals. He has zero insight into his illness or need for treatment. He took an antipsychotic for approximately three days at the beginning of his stay but then refused and since then has refused to even consider taking medications. He does not meet the criteria for forced medications as he is not a behavioral problem and is not gravely disabled. He has been evaluated by our Assistant Clinical Director Dr. Kelly who agreed that although he was delusional and lacked a rational understanding of the proceedings against him, he did not meet criteria for forced medications.
>
> Mr. Walcott has been attending our competency restoration classes and demonstrates a good factual understanding of the roles of individuals in the courtroom but lacks a rational understanding, has no ability to assist in his own defense and is unable to testify relevantly. It is my opinion that he is not competent to proceed at this time; however, he is not being treated for his psychotic symptoms.

---

[10] State Rec., Vol. 1 of 6, report of Dr. Joshua D. Sanderson, pp. 7-9.
[11] State Rec., Vol. 2 of 6, transcript of May 9, 2018; State Rec., Vol. 2 of 6, minute entry dated May 9, 2018; State Rec., Vol. 1 of 6, Order for Pretrial Commitment.

> I am not certain that forced treatment with antipsychotics will be effective as delusions such as this are often fixed and resistant to treatment. However, given the seriousness of his charges, this may be the only available option to potentially effect a change in his ability to have a rational understanding of the case. This would require an order from the court for involuntary treatment with antipsychotics (per Sell v. [U.S.], 539 U.S. 166 [2002]).[12]

After a hearing on January 23, 2019, at which Drs. Johnson and Kelly testified, the state district court orally ordered that petitioner be forcibly medicated.[13] Thereafter, on November 4, 2019, the state district court issued a written order directing that petitioner "be on a forced medication plan if he refuses to take his prescribed medication voluntarily to maintain/regain his competency, (per Sell v. [U.S.], 539 U.S. 166 [2002])."[14]

In the interim, on or about September 17, 2019, petitioner filed the instant federal petition seeking habeas corpus relief in the United States District Court for the Middle District of Louisiana.[15] After he resubmitted his petition on that court's approved form,[16] as directed by the court's *Pro Se* Staff Attorney,[17] the matter was transferred to this Court.[18]

---

[12] State Rec., Vol. 2 of 6, letter from Dr. Janet E. Johnson to Judge Randall Bethancourt dated October 1, 2018.
[13] State Rec., Vol. 2 of 6, transcript of January 23, 2019; State Rec., Vol. 2 of 6, minute entry dated January 23, 2019.
[14] State Rec., Vol. 2 of 6, Order for Appropriate Forced Antipsychotic Medication.
[15] Rec. Docs. 1 and 2.
[16] Rec. Doc. 4.
[17] Rec. Doc. 3.
[18] Rec. Doc. 6. In the transfer order, the United States Magistrate Judge stated that petitioner was seeking relief pursuant to 28 U.S.C. § 2254. However, § 2254 "applies only to post-trial situations"; "[p]re-trial petitions … are properly brought under 28 U.S.C. § 2241, which applies to persons in custody regardless of whether final judgment has been rendered and regardless of the present status of the case pending against him." Dickerson v. Louisiana, 816 F.2d 220, 224 (5th Cir. 1987). See also Brian R. Means, Federal Habeas Manual § 1:34 (2020) ("The vast majority of courts have concluded that, although the texts of § 2241 and § 2254 appear similar in their grant of jurisdiction, § 2254 is the exclusive avenue for a state prisoner challenging the constitutionality of his detention. Section 2254 is properly understood as in effect implementing the general grant of habeas corpus authority found in § 2241, even if the petitioner is not challenging the underlying state court conviction (e.g., challenges to parole determinations), so long as the person is in custody pursuant to the *judgment* of a state court. If, however, the petitioner is in custody pursuant to something *other than a judgment* of a state court (e.g., pre-trial detention, pre-trial bond order, awaiting extradition, or other forms of custody that are possible without a conviction), he may proceed under 28 U.S.C.A. § 2241." (citations omitted)). Given that this is in fact a § 2241 petition, the transferring court was arguably a proper venue, because petitioner is being confined within that court's geographical jurisdiction. See Hartfield v. Quarterman, 603 F. Supp. 2d 943, 955 (S.D. Tex. 2009). However, in its response in this proceeding, the state does not object to the Eastern District of Louisiana as an improper venue. See Rumsfield v. Padilla, 542 U.S. 426, 452 (2004) (Kennedy,

On February 14, 2020, the state filed a response in opposition to the petition.[19] On April 20, 2020, the matter was then referred to the undersigned United States Magistrate Judge for the issuance of proposed Findings and Recommendations.[20] Petitioner thereafter filed a reply to the state's response.[21]

By filing this petition, petitioner is inviting this federal court to interfere in his ongoing criminal proceedings in the state courts. However, federal courts generally decline such invitations except in special circumstances and, even then, only after a petitioner has first exhausted his claims in those state courts. The United States Supreme Court has opined:

> The precise reasons for this longstanding public policy against federal court interference with state court proceedings have never been specifically identified but the primary sources of the policy are plain. One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. The doctrine may originally have grown out of circumstances peculiar to the English judicial system and not applicable in this country, but its fundamental purpose of restraining equity jurisdiction within narrow limits is equally important under our Constitution, in order to prevent erosion of the role of the jury and avoid a duplication of legal proceedings and legal sanctions where a single suit would be adequate to protect the rights asserted.

Younger v. Harris, 401 U.S. 37, 43-44 (1971).

To that end, state pretrial detainees are strictly limited in the types of claims they may assert and the types of relief they may seek under 28 U.S.C. § 2241. For example, the United States Fifth Circuit Court of Appeals has held:

> The [United States Supreme] Court in Braden [v. 30th Judicial District Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973),] …

---

J., concurring) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government.").
[19] Rec. Doc. 13.
[20] Rec. Doc. 14.
[21] Rec. Doc. 15.

> reiterated the long established principle "that federal habeas corpus does not lie, absent 'special circumstances', to adjudicate the merits of an affirmative defense to a state criminal charge prior to a judgment of conviction by a state court." Braden, 410 U.S. at 489, 93 S.Ct. at 1127. The Court also stated that "nothing we have said would permit the derailing of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." Id. at 493, 93 S.Ct. at 1129. The Court's discussion indicates that there is a distinction between a petitioner who seeks to "abort a state proceeding or to disrupt the orderly functioning of state judicial processes" by litigating a speedy trial defense to a prosecution prior to trial, and one who seeks only to enforce the state's obligation to bring him promptly to trial. Brown [v. Estelle,] 530 F.2d [1280,] 1283 [(5th Cir. 1976)]. In Brown we stated that this distinction turns upon the type of relief sought:
>
>> [A]n attempt to dismiss an indictment or otherwise prevent a prosecution is of the first type, while an attempt to force the state to go to trial is of the second. While the former objective is normally not attainable through federal habeas corpus, the latter is, although the requirement of exhaustion of state remedies still must be met.
>
> Brown, 530 F.2d at 1283.

Dickerson v. Louisiana, 816 F.2d 220, 226 (5th Cir. 1987).

Regarding the habeas corpus exhaustion requirement, the United States Supreme Court has similarly observed:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. … [F]ederal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

Rose v. Lundy, 455 U.S. 509, 518 (1982) (footnote, citations, quotation marks, and brackets omitted)). As to the specific exhaustion requirement applicable to proceedings brought under 28 U.S.C. § 2241, the United States Fifth Circuit Court of Appeals has explained:

> In discussing exhaustion in the habeas corpus context, we must distinguish between pre-trial and post-trial situations. It is only in the post-trial setting that exhaustion

7

is mandated by statute. Compare 28 U.S.C. § 2254(b) with 28 U.S.C. § 2241(c)(3). Section 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.

Dickerson v. Louisiana, 816 F.2d 220, 225 (5th Cir. 1987) (citations omitted).

For the following reasons, the foregoing principles preclude this Court's consideration of petitioner's claims.

Petitioner claims that the state district court improperly committed him to ELMHS. That claim is clearly unexhausted.[22] "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted). Moreover:

> [A] claim is not exhausted unless the habeas petitioner provides the highest state court with a fair opportunity to pass upon the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper manner according to the rules of the state courts.

Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999) (quotation marks omitted). In Louisiana, "the highest state court" is the Supreme Court of Louisiana. See La. Const. art. V, § 5(A).

Here, it is beyond cavil that the Supreme Court of Louisiana has not been afforded a "fair opportunity" to pass upon petitioner's claim that he was improperly committed to ELMHS. Petitioner filed only one writ application with the Supreme Court of Louisiana – and that

---

[22] It is unclear precisely to what extent the state is arguing that petitioner's claims in this proceeding are unexhausted. However, that is ultimately immaterial, because a federal court may raise *sua sponte* the lack of exhaustion. Magouirk v. Phillips, 144 F.3d 348, 357 (5th Cir. 1998); Shute v. Texas, 117 F.3d 233, 237 (5th Cir. 1997).

8

application was submitted on April 12, 2018,[23] *before his competency hearing was held.*[24] Although he mentioned the fact of his subsequent commitment in a related motion for reconsideration he later filed with the Supreme Court of Louisiana *after* that competency hearing,[25] the court expressly refused to consider that motion because it was not procedurally proper under the applicable state-court rules. State v. Walcott, 253 So. 3d 143 (La. 2018) ("Not considered. See La.S.Ct. Rule IX, § 6.").[26] Presenting a claim in a procedurally improper manner does not suffice to comply with the exhaustion requirement. As the Fifth Circuit has explained:

> [W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly exhausted* those remedies, i.e., whether he has *fairly presented* his claims to the state courts. *To fairly present the claims, the applicant must present his claims in a procedurally correct manner. Fair presentation does not entertain presenting claims for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor.* The purposes of the exhaustion requirement would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it.

Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009) (emphasis added; citations and quotation marks omitted).

---

[23] State Rec. Vol. 6 of 6, writ application in Case No. 18 KH 752.
[24] As noted, the competency hearing was held – and the order of commitment was entered – on **May 9, 2018**. State Rec., Vol. 2 of 6, transcript of May 9, 2018; State Rec., Vol. 2 of 6, minute entry dated May 9, 2018; State Rec., Vol. 1 of 6, Order for Pretrial Commitment.
[25] State Rec., Vol. 6 of 6, motion for reconsideration in Case No. 18 KH 752.
[26] The rule cited by the Louisiana Supreme Court provides:

> An application for rehearing will not be considered when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ, or when the judgment of this court is merely overruling a motion to dismiss an appeal or a motion to recall or rescind a rule nisi, or when, for any reason, the judgment has not finally disposed of the case in this court, or when an election case has been decided as provided by Rule X, Section 5(c).

Louisiana Supreme Court Rule IX, § 6.

Because petitioner has never fairly presented his claim challenging the propriety of his commitment to ELMHS to the Supreme Court of Louisiana, that claim is unexhausted and cannot be considered by this federal court.

Next, petitioner claims that the state district court's order that he be forcibly medicated is contrary to Sell v. United States, 539 U.S. 166 (2003). Even if the Court assumes that a state pretrial detainee's Sell claim is cognizable under 28 U.S.C. § 2241, which is not entirely clear,[27] that claim is likewise unexhausted. The forced medication order was not entered until **2019**,[28] long after petitioner's sole writ application was filed with the Supreme Court of Louisiana in **2018**.

Lastly, the Court notes that petitioner also asserts a number of claims challenging the validity of his underlying criminal proceedings. Specifically, he claims: (1) he has been denied his right to a preliminary examination; (2) he has been denied his right to represent himself; (3) his defense counsel is ineffective; and (4) the trial judge has a "personal interest" in the case. Because a decision by this federal court with respect such claims could potentially "derail" the pending state proceedings, they are not appropriately considered in a pretrial habeas petition under 28 U.S.C. § 2241. Rather, as a matter of federalism and comity, those claims should first be resolved by the state district court at trial and, if a conviction ultimately results, then considered by the state's appellate courts in an ensuing direct appeal. If petitioner does not obtain the relief he desires through those state procedures still available to him, *then*, after conclusion of that state direct-appeal process, he may seek federal habeas corpus review of his claims pursuant to 28

---

[27] See Pagtakhan v. Foulk, No. C 09-5495, 2010 WL 3769282, at *1 (N.D. Cal. Sept. 21, 2010).
[28] State Rec., Vol. 2 of 6, transcript of January 23, 2019; State Rec., Vol. 2 of 6, minute entry dated January 23, 2019; see also State Rec., Vol. 2 of 6, Order for Appropriate Forced Antipsychotic Medication dated November 4, 2019.

U.S.C. § 2254 "if he is in custody pursuant to conviction and has exhausted his state remedies." See Dickerson, 816 F.2d at 229 & n.16.

## RECOMMENDATION

It is therefore **RECOMMENDED** petitioner's federal petition seeking habeas corpus be **DISMISSED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's Findings and Recommendations within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this \_\_\_\_11th\_\_\_\_ day of August, 2020.

**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**